UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HERMAN LAMOIT POUNDS,

      Plaintiff,

v.

STATE OF MICHIGAN, *et al.*,

      Defendants.
_____/

Case No. 1:25-cv-679

Hon. Paul L. Maloney

## REPORT AND RECOMMENDATION

This is a civil action brought by *pro se* plaintiff Herman Lamoit Pounds.

**I.    Background**

**A.    Plaintiff's earlier lawsuit**

In a previous lawsuit, plaintiff filed a "Civil Rights Complaint and Demand for jury trial 42 U.S.C. § 1983" against 14 defendants including Kalamazoo Township, the Kalamazoo Township Police Department, Alexander Westphal, Tanner Callahan, Kalamazoo County, Kalamazoo County Sheriff Richard C. Fuller, III, Grahams Towing and Recovery, and, James Grahams[sic]. *See Herman Lamoit Pounds v. Charter Township of Kalamazoo*, No. 1:25-cv-187, 2025 WL 977487 at *1 (March 5, 2025), *R&R adopted*, 2025 WL 973480 (W.D. Mich. April 1, 2025). The lawsuit apparently involved a traffic stop. Plaintiff alleged that he resides in Kalamazoo, Michigan, and while he "is a foreign national recognized by the U.S. Department of State" he also "travels with a valid U.S. Passport as identification." *Id*. Plaintiff alleged that Federal authorities "recognize the Plaintiff's status as a foreign national" and that his rights are protected under the "Vienna Convention on Consular Relations", the "U.S. State Department

protocols", the "Federal law regarding foreign nationals", "International treaties", and, "Diplomatic relations provisions." *Id*. Plaintiff alleged that "the Defendants named above systematically Trustpassed [sic] against me And [sic] violated my civil rights and personal property" and violated federal laws and constitutional provisions "under 42 U.S.C. § 1983, 18 U.S.C. §§ 1961-1968 (RICO), the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution." *Id*.

The Court dismissed this case citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), because plaintiff did not allege anything of substance:

> Plaintiff's complaint consists of cryptic statements involving an interaction with authorities. Plaintiff does not allege that any particular defendant engaged in any particular conduct which violated the Constitution or the laws of the United States. At most, plaintiff presented "unadorned accusations" which are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. In short, the complaint does not state cause of action against any defendant under § 1983 or RICO that is "plausible on its face". *Id*. Accordingly, the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

*Id.*, 2025 WL 977487 at *3.

    **B.**  **Plaintiff's present lawsuit**

Plaintiff filed the present *pro se* lawsuit a few months later on June 20, 2025. The Court determined to be a re-filing and continuation of the earlier lawsuit. *See* Administrative Order No. 25-CA-059 (W.D. Mich. July 21, 2025). Plaintiff's complaint (ECF No. 1) named 10 defendants: the State of Michigan; Kalamazoo County 8th District Court (8th District Court); Judge Tiffany A. Ankley (Judge Ankley); Prosecutor Jeffrey S. Getting; Kalamazoo Township Police Department; Public Defender Casey A. Johnson; Graham Towing; and, three unidentified police officers. *See* Compl. at PageID.1. The complaint arose from a traffic stop on February 5, 2025, after plaintiff allegedly "presented a passport and documentation asserting common law rights and non-corporate personhood." *Id*. at PageID.3.

2

After some defendants filed motions to strike or dismiss the complaint, plaintiff filed an amended complaint (ECF No. 17). In the amended pleading, plaintiff alleged that he is "a living, breathing man, appearing sui juris and in propria persona" and identified himself as "a U.S. National and aboriginal man domiciled in Kalamazoo, Michigan." Amend. Compl. at PageID.75. Plaintiff listed eight defendants and an "unidentified" officer as follows:

> 5. Defendant State of Michigan is a governmental entity.
>
> 6. Defendant Township of Kalamazoo is a municipal entity operating under color of law.
>
> 7. Defendant Kalamazoo County Prosecutor's Office is a public office and policymaker for criminal prosecution.
>
> 8. Defendant Casey A. Johnson was appointed as Plaintiff's public defender.
>
> 9. Defendant Judge Tiffany Ankley presided over Plaintiff's bench trial upon Plaintiff's request, but did so without lawful jurisdiction.
>
> 10. Defendants Westphal, Callahan, and Unknown Female Officer are all officers of Kalamazoo Township Police and participated in Plaintiff's unlawful arrest.
>
> 11. Defendant James Graham is a private actor acting jointly with the state to seize Plaintiff's private automobile.

Amend. Compl. at PageID.75-76.

Plaintiff did not allege that any particular incident occurred on any particular date. Rather, plaintiff alleged that around 2023 or 2024 he was subjected to traffic stops and convicted:

> 12. On or around 2023-2024, Plaintiff was subjected to repeated traffic stops, prosecution, and judicial proceedings stemming from a 40-year fraudulent license contract enforced under color of law.
>
> 13. Arresting officers used emergency lights without an actual emergency, violating Plaintiff's rights under the Fourth Amendment.
>
> 14. Plaintiff was denied the right to be brought before a magistrate immediately after arrest, as required by law.

3

>15 . Plaintiff was denied Miranda warnings and falsely classified as a "sovereign citizen" during the stop.
>
>16. Officers refused to sign Plaintiff's personal incident report, obstructing access to public redress.
>
>17. Defendant Judge Ankley proceeded to convict Plaintiff on license-related charges without corpus delicti.
>
>18. Plaintiff was defended by Casey Johnson, who failed to rebut false presumptions or present exculpatory evidence.
>
>19. Plaintiff's automobile was seized by James Graham without a warrant or due process, resulting in conversion of private property.

*Id*. at PageID.76-77.

Plaintiff's amended complaint included five counts.

In Count 1 (violation of civil rights), plaintiff alleged that "[a]ll named Defendants acted under color of law to deprive Plaintiff of his rights" in violation of 42 U.S.C. § 1983. *Id*. at PageID.77.

In Count 2 (malicious prosecution), plaintiff alleged that "[d]efendants caused Plaintiff to be prosecuted multiple times without jurisdiction." *Id*.

In Count 3 (unlawful seizure and conversion), plaintiff alleged that defendant "James Graham seized Plaintiff's automobile without due process, constituting conversion." *Id*.

In Count 4 (denial of due process), plaintiff does not identify any particular defendant, stating that "Plaintiff was denied a meaningful opportunity to be heard and bring a rebuttal against accusations." *Id*. at PageID.77-78.

Finally, in Count 5 (obstruction of justice) plaintiff does not identify any particular defendant, merely stating "Refusal to sign incident report and denial of magistrate access constitutes obstruction." *Id*. at PageID.78.

4

For his relief, plaintiff seeks compensation of $17,000,000.00 in damages. Plaintiff also wants this Court to enter a declaratory judgment "recognizing Plaintiff's rights as a U.S. National and indigenous private man." In addition, plaintiff wants this Court to enter injunctions "to prevent further prosecution based on license fraud" and to return or pay full compensation for "Plaintiff's seized automobile". Finally, plaintiff wants the Court to change his criminal record by issuing an injunction for the "[e]xpungement of license-related convictions." *Id*. at PageID.78-79.

### C.    Defendants' responses to the amended complaint

Defendant James Graham executed a waiver of service (ECF No. 46) but has not appeared. Defendants Kalamazoo Township, Alexander Westphal and Officer Callahan filed an answer to the amended complaint (ECF No. 61). Defendants 8th District Court, Judge Ankley, and the Kalamazoo County Prosecutor's Office filed both dispositive motions (27, 30 and 31) and answers to the amended complaint (ECF Nos. 42, 43, and 44).[1] Defendants State of Michigan and Attorney Johnson also filed dispositive motions (ECF Nos. 18 and 62, respectively).

### II.    Defendants' motions to dismiss

This matter is now before the Court on the following motions.

Defendant State of Michigan has filed a motion to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 18).

Defendant Judge Ankley, 8th District Court and Kalamazoo County Prosecutor's Office have each filed a similar "Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6),

---

[1] The Court notes that although non-party Jeffrey S. Getting is not named as a party in the amended complaint, he filed a dispositive motion (ECF No. 29) and an answer (ECF No. 45). These are addressed in a separate order.

5

and Fed. R. Civ. P. 12(h)(3), or in the alternative, motion for summary judgment pursuant to Fed. R. Civ. P. 56(c)(1)(B) (ECF Nos. 27, 30, and 31, respectively).[2]

Finally, defendant Attorney Johnson filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

### A. Lack of subject matter jurisdiction

Defendants State of Michigan, Judge Ankley, 8th District Court, and Kalamazoo County Prosecutor's Office have moved to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994). The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1332 (diversity of citizenship jurisdiction). *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 513 (2006). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Federal subject-matter jurisdiction "can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). "[W]hen subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss." *Giesse v. Secretary of Department of Health and Human Services*, 522 F.3d 697, 702 (6th Cir. 2008).

---

[2] Defendants did not present arguments related to summary judgment. In addition, these motions are premature because the Court has not issued a case management order and there has been no discovery in this case. *See Plott v. General Motors Corporation, Packard Electric Division*, 71 F.3d 1190, 1195 (6th Cir. 1995) ("Before ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case."). For these reasons, the Court will not address defendants' motions for summary judgment.

A motion to dismiss for lack of subject matter jurisdiction may be brought either as a facial attack or a factual attack. *Gentek Building Products, Inc. v. Steel Peel Litigation Trust*, 491 F.3d 320, 330 (6th Cir. 2007). "A facial attack is a challenge to the sufficiency of the pleading itself." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (emphasis omitted).

> When reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. If those allegations establish federal claims, jurisdiction exists.

*Id.* (internal citation omitted). On the other hand, when a court reviews a complaint under a factual attack, "no presumptive truthfulness applies to the factual allegations." *The Ohio National Life Insurance Company v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). When facts presented to the district court give rise to a factual controversy, the court must weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist. *Id.*

Finally, this Court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action"); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."); *Rauch v. Day & Night Manufacturing Corp.*, 576 F.2d 697, 701 (6th Cir. 1978) ("Rule 12(h)(3) preserves and recognizes the court's time-honored obligation, even sua sponte, to dismiss any action over which it has no subject-matter jurisdiction").

### 1. Defendant State of Michigan

The State of Michigan has raised a facial attack on jurisdiction based on the Eleventh Amendment.

> Before considering a suit against a state, a federal court must determine whether the Eleventh Amendment bars jurisdiction. That constitutional provision reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This amendment grants sovereign immunity to the states in most cases, which prevents federal courts from having jurisdiction in lawsuits brought by private plaintiffs where the state is a defendant.

*Morgan v. Board of Professional Responsibility of the Supreme Court of Tennessee*, 63 F.4th 510, 515 (6th Cir. 2023).

There are three exceptions to a State's sovereign immunity:

> (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity.

*S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). None of these exceptions apply to plaintiff's claims. Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

With respect to injunctive relief, "*Ex parte Young* permits a private party to seek prospective injunctive relief against state officials in their official capacity before those officials violate the plaintiff's federal constitutional or statutory rights." *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 733 (6th Cir. 2022). "One prerequisite for the *Ex parte Young* exception to apply is that the claimant must explicitly allege that a state official acted in her official capacity." *Morgan*, 63 F.4th at 517. In addition, the identified state official "must possess some connection with the enforcement of the challenged law, and must threaten or be about to commence proceedings — that is, it must be likely that the official will enforce the law against the plaintiff". *Doe v. DeWine*,

8

910 F.3d 842, 848 (6th Cir. 2018) (internal quotation marks, internal citations, and brackets omitted).  The *Ex parte Young* exception does not apply here because plaintiff did not identify any particular State official from whom he seeks injunctive relief. For all of these reasons, defendant State of Michigan should be granted summary judgment for lack of subject matter jurisdiction.

### 2. Defendants 8th District Court, Judge Ankley, and Kalamazoo County Prosecutor's Office

Defendants 8th District Court, Judge Ankley, and the Kalamazoo County Prosecutor's Office also seek dismissal for lack of jurisdiction.  Defendants characterize plaintiff's allegations as based on sovereign citizen rhetoric and point out that this Court has previously "found no jurisdiction for these fictitious claims which are not based in law but based in the fantasies of the sovereign citizen movement." *See, e.g.*, Judge Ankley's Brief at PageID.133 (citing *Potter v. United States*, 161 Fed. Cl. 24, 28-29 (2022) and *Burnett v. Michigan*, No. 1:24-cv-55, 2024 WL 3721741 (June 18, 2024), *R&R adopted*, 2024 WL 3466258 (W.D. Mich. July 19, 2024)).

In *Burnett*, the Court addressed plaintiff's claim that she was not a person subject to state or federal law, but rather a fictional entity, in that case a vessel subject to maritime laws:

> Based on Burnett's allegations, the Court construes her complaint as alleging the type of "meritless rhetoric" espoused by sovereign citizens. *See United States v. Coleman*, 871 F.3d 470, 476 (2017). "The 'sovereign citizen' movement is a highly disperse, antigovernment movement." *United States v. Gooch*, 595 Fed. Appx. 524, 527, fn 1 (6th Cir. 2014). In general, sovereign citizens believe that the United States Government is a fraud and "that they, the sovereign citizens, retain an individual common law identity exempting them from the authority of those fraudulent government institutions." *Id*. (internal quotation marks omitted). . . .
>
> The hallmark of the sovereign citizen movement is adherence to the belief that even though the person was born and resides in the United States, "he is his own sovereign and is therefore not a United States citizen." *See Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011). "So-called sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal

9

proceedings." *Id*. "The sovereign citizen concept hinges on a mistaken belief that federal, state, and local governments are illegitimate and therefore, laws and regulations enacted by those bodies are unenforceable." *United States v. Booker*, No. 322CR00034KDBDSC, 2022 WL 3570591 at *2 (W.D.N.C. Aug. 18, 2022). Sovereign citizen-type arguments include attempts to convince courts that their status as sovereign citizens differs from the status of the fictional individuals identified by their birth certificates. *See generally, Potter v. United States*, 161 Fed. Cl. 24, 28 (2022). . . .

In summary, Burnett's complaint is based upon the meritless rhetoric espoused by sovereign citizens. This Court has no jurisdiction for fictitious claims which are not based in law, but based in the fantasies of the sovereign citizen movement. *See Potter*, 161 Fed. Cl. at 28-29.

*Burnett v. Michigan*, 2024 WL 3721741 at *6-7.

In his complaint, plaintiff identified himself as "a living, breathing man appearing sui juris and in propria persona" and an "aboriginal man". These allegations are used in lawsuits asserting sovereign citizen theory. *See*, *e.g.*, *Campbell v. Mulligan*, No. 3:19-CV-00540 (AWT), 2021 WL 3173021 at *4 (D. Conn. July 27, 2021) (use of the phrase "a living breathing man" is grounded in sovereign citizen theory); *Cruel-El v. South Carolina*, No. 6:18-CV-1680-HMH-JDA, 2018 WL 3628844 at *3 (July 10, 2018), *R&R adopted*, 2018 WL 3619798 (D.S.C. July 30, 2018) (observing that the complaint had the hallmarks of sovereign citizen theory, including plaintiff's identification as "Indigenous Aboriginal", "Natural Person", and "In Propria Persona Sui Juris"); *Burns v. Wright*, No. C17-5842RBL, 2017 WL 10103547 at *1 (W.D. Wash. Dec. 12, 2017) (observing that the phrase "in *Propria Persona*, proceeding *Sui Juris*" appears as some of the "magic words" in sovereign citizen filings).

In a subsequent filing, plaintiff made it clear that this lawsuit arises from sovereign citizen theory. Plaintiff filed a combined "Declaration and Motion regarding Authenticated birth

record and estate interest" (ECF No. 54) which sets out the legal basis of the lawsuit and asked this Court to file his birth certificate under seal.[3]

---

[3] In this "Declaration" plaintiff states:

1. **Authenticated Birth Record and Chain of Custody**: I am the Plaintiff in this matter and the living man referenced on the Birth Certificate issued in **Cook County, Illinois, in [redacted]**. That original record has been subsequently certified and authenticated in the following chain of custody:

   o **Cook County Clerk Certification (2021)** by County Clerk Karen A. Yarbrough, confirming the true and correct copy of the original record on file.

   o **Illinois Secretary of State Certification (2022)** by Jesse White, Secretary of State, confirming the authority and seal of the Cook County Clerk.

   o **U.S. Department of State Authentication (April 1, 2022)** under the Great Seal, issued and signed on behalf of Secretary of State Antony J. Blinken, rendering the Illinois-issued certificate federally recognized and entitled to full faith and credit.

   o **Michigan UCC Certification (2023)** by Secretary of State Jocelyn Benson, confirming the filing and existence of UCC Financing Statements under the name HERMAN LAMOIT POUNDS, thereby linking the authenticated estate record to public commercial filings.

2. **Estate Creation and Misuse**: The estate associated with my name was created at birth and has since been administered and utilized by public actors without informed consent. "No man is bound to an agreement without his consent" (*National Bank v. Insurance Co.*, 104 U.S. 54, 78 (1881)).

3. **Perfection of Interest**: I have given public notice of my claim through recorded filings, including my **Affidavit of Constitutional U.S. Nationality** (Allegan County, April 7, 2023, Document No. 2023-00-4536) and UCC-1 Financing Statements, consistent with UCC §§ 9-310, 9-501.

4. **Constitutional Foundations**:

   o **The Declaration of Independence (1776)** affirms that governments derive just powers from the **consent of the governed**.

   o **The Magna Carta (1215, ch. 39)** guarantees that no free man shall be deprived of liberty except by lawful judgment of peers or the law of the land, a principle reaffirmed in *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 276 (1856).

   o The Supreme Court has affirmed that liberty includes freedom from involuntary servitude (*Bailey v. Alabama*, 219 U.S. 219 (1911)) and that the right of property is a fundamental right (*Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429 (1895)).

5. **Connection to Harms Claimed**: The injuries in my Amended Complaint – including deprivation of constitutional protections and involuntary contractual obligations – stem directly from the misappropriation of the estate created at birth. The authenticated federal record and chain of custody establish the estate's origin; my filings establish my claim of interest.

In *Rivera v. United States*, 105 Fed. Cl. 644 (2012), the court explained the significance of the birth certificate in the sovereign citizen theory known as "redemption":

> [S]overeign citizens become parties to government contracts on receipt of a birth certificate and social security card. *See Bryant v. Washington Mut. Bank*, 524 F.Supp.2d 753, 758 (W.D.Va.2007). Through these contracts, individuals "unknowingly pledge themselves and their property . . . as security for the national debt," but the Government holds the "profits it makes from this use of its citizens and their property." *Id*. at 758-59. Those who subscribe to this theory believe that the 1933 House Joint Resolution 192 provides the legal basis for "sovereign citizens" to collect money held by the Government in the trust when they file one or more Uniform Commercial Code ("UCC") financing statements, naming themselves as both the secured party and the debtor. *Id*. at 759 (citing H.R.J. Res. 192, 73d Cong. (1933)).

*Rivera*, 105 Fed. Cl. at 646.

Here, plaintiff is using a variation of that argument. In his declaration plaintiff: differentiates the "living man" referenced in his birth certificate from the "estate associated with my name" created at birth; sets out the "authenticated estate record" associated with plaintiff's name established by UCC financing statements; and, sets out the "chain of custody" connecting the birth certificate to his "authenticated estate record". Declaration at PageID.336-337. Notably, plaintiff pointed out that this "estate" forms the basis of his lawsuit stating,

> The injuries in my Amended Complaint – including deprivation of constitutional protections and involuntary contractual obligations – stem directly from the misappropriation of the estate created at birth.

*Id*. at PageID.337.

---

6. **Judicial Notice Requested**: I respectfully request this Court to take judicial notice of the authenticated chain of custody, from county record through state and federal authentication, and the related UCC filings, as probative evidence of estate origin and my lawful claim of interest. Pursuant to Fed. R. Evid. 902(1) and (4), documents under the seal of the United States are self-authenticating and admissible without further proof. The authenticated chain of documents therefore stands as prima facie evidence of the facts it recites, consistent with *United States v. Chemical Foundation*, 272 U.S. 1 (1926).

Declaration at PageID.336-337.

Plaintiff's amended complaint as supplemented by the Declaration and birth certificate demonstrate that plaintiff is using the nonsensical sovereign citizen legal framework to obfuscate his identity and to create his claims against defendants, with all violations stemming from the misappropriation of plaintiff's "estate created at birth." This Court has no jurisdiction for fictitious claims which are not based in law, but based in the fantasies of the sovereign citizen movement. *See Potter*, 161 Fed. Cl. at 28-29. Accordingly, defendants' motions for lack of subject matter jurisdiction (ECF Nos. 27, 20 and 31) should be granted. Furthermore, because plaintiff's sovereign citizen claims apply to all defendants, this entire lawsuit is frivolous and should be dismissed for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

### B. Failure to state a claim

Even if the Court had subject matter jurisdiction, plaintiff has failed to state a claim for relief. A complaint may be dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) if it fails to give the defendant a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). While *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to

13

conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). Thus, a complaint based upon "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.

> 1. **Defendant Attorney Casey Johnson is not a state actor**

As an initial matter, Attorney Johnson points out that the federal claim against him appears in Count 1, in which plaintiff seeks relief pursuant to 42 U.S.C. § 1983. As discussed, plaintiff's claim consists of the conclusory allegations that Attorney Johnson was appointed as plaintiff's public defender, that plaintiff "was defended by Casey Johnson", and that Attorney Johnson "failed to rebut false presumptions or present exculpatory evidence". Section 1983 "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem*, Ohio, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Attorney Johnson contends that plaintiff's § 1983 claim fails because he is not a state actor subject to that statute. The Court agrees. "It is well-settled that a lawyer representing a client is not a state actor 'under color of law' within the meaning of § 1983." *Dallas v. Holmes*, 137 Fed. Appx. 746, 752 (6th Cir. 2005). In this regard, "[i]t is firmly established that a public defender or a court-appointed defense counsel, while acting in that capacity, is not a state actor for purposes of § 1983." *White v. Robertson-Deming*, 9 Fed. Appx. 418, 419-20 (6th Cir. 2001) (citing *Polk County v. Dodson*, 454 U.S. 312, 321 (1981)). For these reasons, defendant Johnson's motion to dismiss (ECF No. 62) should be granted as to Count I. Furthermore, for the reasons stated in §

III.B.2, *infra.*, the motion should be granted as to the remainder of plaintiff's claims against defendant Johnson.

### 2. The amended complaint is conclusory

Defendants 8th District Court, Judge Ankley, the Kalamazoo County Prosecutor's Office, and Attorney Johnson have filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Here, plaintiff's amended complaint does not contain any facts to support a plausible claim against any defendant. The amended complaint does not include any allegation against the 8th District Court or Kalamazoo Township. Plaintiff did not provide dates, times, locations, or descriptions of how any particular defendant allegedly violated his legal rights. Rather, the amended complaint contains only conclusory allegations against the defendants. At most, plaintiff presented only "unadorned accusations" that defendants unlawfully harmed him. Such allegations are insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Accordingly, the motions to dismiss filed by defendants 8th District Court (ECF No. 30), Judge Ankley (ECF No. 27), Kalamazoo County Prosecutor's Office (ECF No. 31), and Attorney Johnson (ECF No. 62) should be granted.

### III. RECOMMENDATION

For all of these reasons, I respectfully recommend that the motions to dismiss the amended complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) brought by defendants State of Michigan (ECF No. 18), Judge Ankley (ECF No. 27), 8th District Court (ECF No. 30) and Kalamazoo County Prosecutor's Office (ECF No. 31) be **GRANTED**. I further recommend that this Court *sua sponte* **DISMISS** the entire lawsuit for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(h)(3).

In the alternative, I recommend that the motions to dismiss the amended complaint for failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) brought by defendants

15

State of Michigan (ECF No. 18), Judge Ankley (ECF No. 27), 8th District Court (ECF No. 30), Kalamazoo County Prosecutor's Office (ECF No. 31), and Attorney Johnson (ECF No. 62) be **GRANTED**.

Date: <u>November 24, 2025</u>     /s/ Ray Kent
                                   Ray Kent
                                   U.S. Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).